# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHERYL BUSTAMENTE,<br><br>         Plaintiff(s),<br><br>v.<br><br>EUGENE BURGER MANAGEMENT CORPORATION, et al.,<br><br>         Defendant(s). | 2:12-CV-2158 JCM (VCF) |

**ORDER**

Presently before the court is a motion for summary judgment filed by defendants Eugene Burger Management Corporation ("EBMC") and Eugene Burger Management Corporation of Nevada ("EBMCNV"). (Doc. # 22). Plaintiff Cheryl Bustamente filed a response (doc. # 23) with accompanying exhibits (docs. # 24-27), and defendants filed a reply (doc. # 30).

**I.     Background**

First, plaintiff alleges that defendants violated the Americans with Disabilities Act ("ADA") by not "find[ing] a reasonable accommodation for [p]laintiff's disability . . ." and for terminating plaintiff as a result of her disability and medical needs. (Doc. # 1 at 4).

Next, plaintiff alleges that defendants violated the Family and Medical Leave Act ("FMLA") by not providing her with a family medical leave of absence form after plaintiff requested one on May 17, 2012, and by terminating plaintiff for requesting FMLA leave. (Doc. # 1).

. . .

**James C. Mahan**
**U.S. District Judge**

1   Plaintiff was employed by EBMCNV from April 20, 2011, to May 18, 2012, as a resident property manager. (Doc. # 23-1). Around January 2012, plaintiff had knee trouble necessitating the use of crutches. (Doc. # 22-2 at 19). Plaintiff e-mailed her supervisor, Katherine Wolfe, on February 10, 2012, informing Wolfe of plaque accumulation in plaintiff's knee that made it difficult to climb stairs. (Doc. # 24). At some point after March 27, 2012, plaintiff informed Wolfe she may require surgery. (Doc. # 23-1). On March 30, 2012, Wolfe informed her superior that she had decided to terminate plaintiff. (Doc. # 22-9).

On May 3, 2012, plaintiff e-mailed Wolfe to inform her of plaintiff's May 14, 2012, doctor's appointment, which Wolfe acknowledged in a May 7, 2012, e-mail response. (Doc. # 23-1). Plaintiff e-mailed Wolfe on May 14, 2012, to inform her that surgery would take place on May 25, 2012. *Id.* Plaintiff submitted a leave of absence request form to Wolfe on May 16, 2012. (Doc. # 24-1). Plaintiff was dismissed on May 18, 2012. (Doc. # 22-13).

Plaintiff initially filed with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC mailed a right to sue letter on September 20, 2012. (Doc. # 1). The complaint was timely. (Doc. # 1).

Plaintiff requests an injunction, back pay and "front pay" based on reduced income, liquidated damages, compensatory damages, punitive damages, attorney's fees, and pre-judgment interest. (Doc. # 1 at 6-7).

**II.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a
2  showing sufficient to establish an element essential to that party's case on which that party will bear
3  the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet
4  its initial burden, summary judgment must be denied and the court need not consider the non-moving
5  party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

6  If the moving party satisfies its initial burden, the burden then shifts to the opposing party
7  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith
8  Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
9  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
10 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
11 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
12 Cir. 1987).

13 In other words, the non-moving party cannot avoid summary judgment by relying solely on
14 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
15 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
16 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
17 for trial. *See Celotex Corp.*, 477 U.S. at 324.

18 At summary judgment, a court's function is not to weigh the evidence and determine the
19 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
20 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable
21 inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the non-moving party is
22 merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-
23 50.

24 **III.   Discussion**
25      *A. ADA Claim*
26         *I. Discharging the Inference of Discriminatory Behavior*
27      The ADA states, "No covered entity shall discriminate against a qualified individual on the
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1 basis of disability in regard to job application procedures, the hiring, advancement, or discharge of
2 employees . . . ." 42 U.S.C. § 12112(a). When alleging a violation of the ADA, a plaintiff must
3 establish a prima facie case of discrimination before the burden of presenting a non-discriminatory
4 rationale for the challenged action passes to a defendant. *See Raytheon Co. v. Hernandez*, 540 U.S.
5 44, 50-51 (2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). "To state a
6 prima facie case under the ADA, a plaintiff must prove that [s]he is a qualified individual with a
7 disability who suffered an adverse employment action because of h[er] disability." *E.g.*, *Sanders v.*
8 *Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996), *cert. denied*, 117 S. Ct. 1247 (1997).

9 A defendant's explanation for the decision to terminate an allegedly disabled plaintiff must
10 "disclaim[] any reliance on the employee's disability . . . ." *See Dark v. Curry Cnty.*, 451 F.3d 1078,
11 1084 (9th Cir. 2006) (quoting *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir.
12 2001)).

13 Here, even assuming *arguendo* that plaintiff can establish a prima facie case of
14 discrimination under the ADA, plaintiff decidedly lacks sufficient evidence to muster a genuine issue
15 of material fact to avoid summary adjudication of the first claim. Fed. R. Civ. P. 56(a). Chiefly,
16 plaintiff's dearth of evidence is quite conspicuous in contrast to defendants' considerable
17 documentation of the decision to terminate plaintiff.

18 Defendants assert multiple reasons for plaintiff's termination. First, Wolfe stated in her
19 deposition that plaintiff was deficient in utilizing the "Yardi" program as well as "miss[ing] several
20 initial webex training sessions on how to complete the work orders." (Doc. # 22-11 at 18). Second,
21 Wolfe indicates that plaintiff did not fulfill her responsibilities to act on voucher discrepancy reports
22 to correct account improprieties. (Doc. 22-11 at 16-17).

23 Moreover, plaintiff's work product was audited twice by third parties, and her files "did not
24 pass." (Doc. # 22-11 at 17). Third, plaintiff recognizes that she did not follow instructions regarding
25 the holiday gifts, giving $25 cash instead of $50 gift cards to each employee. (Doc. # 22-2 at 18-19).
26 Fourth, plaintiff acknowledges that she was responsible for the security of the petty cash fund, but
27 money went missing from this fund, twice, though a safe had been provided to store the funds after
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  the first incident. (Docs. # 22-2 at 17, 22-6 at 2). Fifth, plaintiff temporarily lost a folder that

2  "contain[ed] information regarding fraudulent activity . . . ." (Doc. # 22-2 at 20, 22-7 at 2).

3  Furthermore, Wolfe specifically articulated to plaintiff that losing the folder "constitute[d]

4  negligence . . . and unsatisfactory job performance," and could be the basis for dismissal from

5  employment. (Doc. 22-6 at 2).

6        Should defendants present sufficient evidence that plaintiff's termination was not the product

7  of discrimination, the presumption of an impermissible termination "drops from the case." *See, e.g.*,

8  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*,

9  450 U.S. 248, 255 n.10 (1981)). Through the evidence of the plaintiff's professional shortcomings,

10  defendants have met their burden to provide a non-discriminatory rationale for the termination of

11  plaintiff. *See Dark*, 451 F.3d at 1084. The presumption of discrimination is therefore removed. *See,*

12  *e.g.*, *St. Mary's*, 509 U.S. at 507.

13        *ii. Challenging Defendants' Rationale*

14        If a defendant defeats the initial inference of wrongdoing, a plaintiff maintains the burden

15  to prove the defendant's liability. *See Raytheon*, 540 U.S. at 53 (2003). At this stage, "the only

16  relevant question . . . [is] whether there [is] sufficient evidence from which a jury could conclude

17  that [defendants] did make [their] employment decision based on [plaintiff's] status as disabled

18  despite [defendants'] proffered explanation." *Id.* Here, plaintiff lacks sufficient evidence to show

19  defendants' explanation was mere pretext.

20        Plaintiff implies the chronology of this dispute is critical in assessing the evidence elucidating

21  defendants' employment decision. (Doc. # 23 at 22-23). The court agrees with this premise, yet not

22  with the conclusion suggested by plaintiff. While the complaint alleges that EBMC knew of

23  plaintiff's knee issues "[i]n or about December 2011," plaintiff states that the earliest defendants

24  could have known about her medical troubles was January 2012, by observing her use of crutches.

25  Wolfe admits she may have seen plaintiff utilizing crutches or limping. (Docs. # 1 at 2-3, 22-2 at

26  19, 22-11 at 23).

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    Plaintiff attempts to link the timing of her communication to Wolfe regarding her potential
2 need for knee surgery with Wolfe's March 30, 2012, e-mail informing Wolfe's superior that she had
3 decided to terminate plaintiff. (Docs. # 22-9, 23 at 5-6). However, correlation does not equal
4 causation, especially when much of plaintiff's temporally correlative evidence relating plaintiff's
5 injury to her termination refers to the events which took place after Wolfe's March 30, 2012, e-mail.[1]
6 (Doc. # 23).

7    Moreover, plaintiff does not proffer evidence to demonstrate defendants' explanation for the
8 employment decision was pretext. Quite to the contrary, the fact that "[Wolfe] never said no" to
9 plaintiff's requests to take time off for medical appointments and that an assistant was provided to
10 show second-floor apartments when plaintiff was unable to utilize stairs demonstrates defendants'
11 accommodation of plaintiff's physical limitations. (Doc. # 22-2 at 19, 26) ("[Wolfe] knew I was
12 having a hard time going up and down the stairs. So [Wolfe] said, 'Well, have [Joanne Friend] do
13 it.'").

14    Thus, the evidence of temporal association between plaintiff's disclosure of her ailment and
15 Wolfe's decision to terminate employment does not raise a genuine issue of material fact as to
16 pretext. *See Raytheon*, 540 U.S. at 53 (2003); *Celotex Corp.*, 477 U.S. at 323-24. Consequently,
17 defendants' motion for summary judgment shall be granted as to plaintiff's first cause of action.

18    *B. FMLA Violation*

19    "The FMLA provides job security and leave entitlements for employees who need to take
20 absences from work for personal medical reasons . . . ." *Xin Liu v. Amway Corp.*, 347 F.3d 1125,
21 1132 (9th Cir. 2003). The statute states "[i]t shall be unlawful for any employer to interfere with,
22 restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."
23 29 U.S.C. § 2615(a)(1). The FMLA also declares: "[i]t shall be unlawful for any employer to
24 discharge or in any other manner discriminate against any individual for opposing any practice made

---

[1] Plaintiff's argument relies on several events that transpired after Wolfe's March 30, 2012 e-mail: (1) that plaintiff told Wolfe on May 1, 2012, that her knee was worsening, which necessitated a May 14, 2012, doctor's appointment; (2) plaintiff informed Wolfe on May 14, 2012 that her left knee required surgery; and (3) plaintiff informed Wolfe on May 17, 2012 of an additional doctor's appointment. (Doc. # 1).

1 unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

2 Per 29 U.S.C. § 2654, the United States Department of Labor may issue regulations in furtherance of the FMLA. Further, C.F.R § 825.220(a)(1) provides, "An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the [FMLA]." "The [FMLA's] prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R § 825.220(c).

8 Here, plaintiff alleges that defendants violated the FMLA because: (1) defendants did not provide plaintiff with a family medical leave of absence form, and (2) plaintiff was dismissed for her attempt to exercise leave under the FMLA. (Doc. # 1 at 5).

11 The court interprets plaintiff's allegations under the FMLA as interference claims because both prongs of the present claim fall within the plain meaning of 29 U.S.C. § 2615(a)(1). *See Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011). Moreover, § 2615(a)(2) is inapplicable to this case, as it applies only to adverse actions against employees who pursue claims against their employers under the FMLA. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001); *Krouse v. Ply Gem Pac. Windows Corp.*, 803 F. Supp. 2d 1220, 1228-29 (D. Or. 2011).

18 Plaintiff contends defendants did not provide the required FMLA leave of absence form and that they "terminat[ed] [plaintiff] for attempting to exercise her rights under the FMLA . . . ." (Doc. # 1 at 6). Therefore, the actions alleged may constitute "interfer[ence] with, restrain[t], or den[ial]" of an "attempt to exercise" plaintiff's rights under the FMLA. 29 U.S.C. § 2615(a)(1); (doc. # 1 at 6.

23 "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient . . . [t]he judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252. The court may reject a non-movant's arguments against summary judgment that are based only on inferences from circumstantial evidence. *See McLaughlin v. Liu*,

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

849 F.2d 1205, 1208 (9th Cir. 1988); *see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

An employee's claim of interference under the FMLA lacks foundation if an employer had previously decided to terminate an employee, regardless of leave status. *See Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1097 (9th Cir. 2007). Here, the evidence showing that Wolfe intended to fire plaintiff before plaintiff's request for leave under the FMLA is uncontested. Indeed, Wolfe stated in her deposition that plaintiff's termination "was a done deal" as of April 10, 2012. (Docs. # 22-10 at 2, 22-11 at 21). Moreover, Wolfe had offered another individual employment "to replace [plaintiff]" as of April 10, 2012. (Doc. # 22-10 at 2).

In addition, the court disagrees with plaintiff's assertion that "the circumstances which led up to [plaintiff's] termination can just as easily be explained as a result of [plaintiff's] disability and her request for a leave of absence, as it can as a result of her performance." (Doc. # 23 at 26). Wolfe's March 30, 2012, e-mail to Burger conveying her decision to terminate plaintiff predates both plaintiff's message informing Wolfe that knee surgery was imminent and plaintiff's corresponding request for FMLA leave. (Docs. # 22-9, 24 at 6, 24 at 8).

Plaintiff supports this claim with the same chronological fact associations as her ADA claim. (Doc. # 1 at 5). However, this brand of circumstantial evidence, standing on its own, cannot hurdle the requisite evidentiary standard. Mere temporal proximity between plaintiff informing defendants of her knee injury and the termination does not raise a material issue of fact regarding the grounds of the termination. *See Zsenyuk v. City of Carson*, 99 Fed. Appx. 794, 796 (9th Cir. 2004).

Moreover, it is peculiar that plaintiff accuses defendants of denying or restricting FMLA leave by not providing an FMLA leave request form when plaintiff failed to follow defendant's explicit instructions indicating how plaintiff could obtain the form. According to plaintiff's affidavit, payroll benefits department employee Ignacio Saucedo instructed plaintiff to request the FMLA form from plaintiff's supervisor–plaintiff did not do so. (Doc. 23-1 at 3). Instead, plaintiff found, filled out, and submitted a copy of the form on her own initiative less than one day after contacting Saucedo. *Id.*

    Because the only evidence of defendants' alleged FMLA interference is the temporal similarity of events and because plaintiff failed to follow clear, non-burdensome instructions to obtain the FMLA form, a reasonable jury could not find that defendants interfered with plaintiff's rights under the FMLA. *See Celotex Corp.*, 477 U.S. at 323-24. Therefore, defendants' motion for summary judgment will be granted as to this claim.

    Accordingly,

    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motion for summary judgment filed by defendants EBMC and EBMCNV (doc. # 22) be, and the same hereby is, GRANTED. The clerk shall enter judgment accordingly and close the case.

    DATED July 16, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 9 -